Good morning, Your Honors, and may it please the Court. Matt McGuire on behalf of Director Clarke. Travion Blount has now been pardoned twice by two different governors of Virginia, and currently he is serving a 14-year sentence after former Governor McCaul had pardoned him again on January 12, 2018. That conditional pardon does not move the case, however, for a couple of reasons. The first is that there are conditions attached to the pardon that he could violate that would cause the sentence to revert back to 40 years, and also because the District Court's decision in this case was presupposed on the idea that the original life sentences Mr. Blount received tainted any exercise of executive clemency, or put differently, no exercise of executive clemency could cure the constitutional defect here. Let me ask you a question. What is the, what would be the remedy of a federal court when a District Court misapplies the certification process by representing to the Virginia Supreme Court that whatever it did with respect to the governor's commutation order was going to be case dispositive, and then when the case returned to federal court and the answer was that the commutation was legitimate under the state constitution, the District Court at that point said it was not case dispositive at all, and it pushed the Virginia court, there was a big debate in Virginia about whether to accept certification at all, and finally one of the compromises that was struck was that certification would be accepted if it was case dispositive, but the Virginia Supreme Court did not want to be in a position of issuing just advisory opinions, and when something like this happens, it's very detrimental to comity in an area where the Supreme Court has stressed that comity is important. So, when you have an erroneous application, that's a gentle way of putting it, of a certification process, what remedy is there for an appellate court? So we think this is the major issue in the case, Judge Wilkinson, the one we would like the court to resolve it on. This is the one, this is the issue we would like to see the court resolve the case on is about certification. Here's what the common... You can come back to that, I want you to answer that, but you know, there's also a ruling that the 14 to 1 opinion, the dissenting, single dissenting opinion in a 14 to 1 case is better reasoned, and therefore chose not to follow the 14 in Surratt, and all squares holding in LeBlanc, all fours holding that on Virginia's thing was rejected because the court didn't reach the merits. It seems to me those also need addressing to somehow, they're major problems, but why don't you address Judge Wilkinson's question? Well, there are multiple problems here. One of it that concerns me, just from a standpoint of relationship between the state and federal courts, is when we make a representation to the Virginia courts that the thing is going to be case dispositive, and they really have a problem with issuing an advisory opinion because it, in their view, it puts them into a kind of a subordinate relationship with the federal judiciary that the Virginia courts, in their, out of their own understandable self-respect, did not wish to assume. And so I'm saying, if a court, if a federal court represents that something is case dispositive and the Virginia court gives an answer, that would dispose of the case under the terms the federal court set, is the remedy for us to say, you've got to follow the initial submission and dismiss the petition to make it case dispositive? Is that what comedy requires? That's the warden's, or the director's position in this case, Judge Wilkinson, to go, to try to dovetail all this also together with Judge Niemeyer's point. We see that as sort of the threshold issue. The other issues we briefed and we think are present here, we do not have a... Well, we don't want to resurrect that issue. The certification question? Yes. Because it is important as... I don't understand why maybe, well, I actually don't understand why, what anybody is doing briefing now because we're now, what does your client now have? What is the sentence? The defendant, in this case, has a 14-year sentence, Judge Monk. 14-year sentence. And do you really think, if you were totally successful and we go back to zero, he's going to get less than 14 months? Well, from representing the director, we agree, I'm representing the state here, Judge Monk. So, from our position, his sentence is 14 years unless he violates one of the conditions of his most recent court. All you're doing is asking us to leave that alone. To leave it alone, Judge Monk, but the district court's original decision in this case was, is premised on the idea that no act of executive clemency can cure the initial gram violation such that the taint of the original six life sentences flows through the executive clemency decisions. So, from the commonwealth's perspective, we read the district court's order in this case as requiring us to hold a re-sentencing event for Mr. Blount notwithstanding the pardons he has received. So, that's why the case isn't moved and why we have an interest here. The certification issue is important. Are you familiar with our Ciroc decision? Yes, Judge Monk, which is partially one of the issues we briefed in this case, which is after Governor McDonald's original pardon a couple, several years ago now, reducing the sentence to 40 years, the case was moved. You're talking about the pardon, the most recent pardon. Isn't that all she wrote under Ciroc? Yes, Judge Monk, but so was the original pardon several years ago before this case arose. The district court said there that Ciroc... We don't ignore more recent developments. Well, it's the district court's error. So, there's two pardons here. And so, the district court's error applies to both. And so, the district court's opinion remains on the books the way it is. The Ciroc, she distinguished the Ciroc opinion on the basis of the taint theory. You want us, even though this is moot under Ciroc, you want us to write a bunch of dicta about the district court's earlier rationale? Is that what you want? Judge Monk, we certainly agree that the case is moot under Ciroc, but it was moot a long time ago as well under Ciroc. So, we're happy to have... We should write that dicta. We're happy to have the court say that the case is moot under Ciroc. To Judge Wilkinson's earlier question, if I can return to it briefly, is that as a matter of comedy between the federal courts and the Virginia Supreme Court, it is important to follow what is represented to the state courts by the certification process. But what was represented was, as I understand the certification process in Virginia, as it is in Maryland, I will be quick to tell you, is that when you certify something, you say that it has, if you decided it one way, it will determine the case. At least in Maryland, and you tell me if this is wrong, tell me if you have case law from Virginia that is reversed. But it could be decided, if the answer to the question is yes, that resolves the case. If the answer to the certified question is no, it may not resolve the case. That's anyway, Maryland law. I think that's right, Judge Motz, because the precept is... Well, then, I don't understand what Soushi... If I can, I'll try to explain what happened here, and that may put a little bit of clarity behind it. Do you agree with that? I agree with that premise, Judge Motz. If the question for the Virginia Supreme Court, when it takes a certified question, is it going to be case determinative, or could it be? And here, the representation made twice by the district court to the Virginia Supreme Court was, quote, if Mr. Blount's sentence had been validly commuted, if Governor McDonald's 40-year pardon was valid, his claims challenging his life sentences are moot. So the representation was, if you say that this commutation or partial pardon was valid, this habeas petition is moot and will be dismissed. What happened was, after that result was communicated, that is what the Virginia Supreme Court found, and that was communicated to the district court, the district court said, actually, the certified questions were irrelevant to this issue. Well, after the thing came back, and there was seemingly no answer that the Virginia Supreme Court was dispositive. That's right, Judge Wilkinson. That's the problem. But the thing about this case is, there's so many errors that were committed, and I agree that under the Surratt order, when there is a pardon or a commutation, we don't have any jurisdiction on that, because they're not contesting a judicial sentence. There's an executive sentence essentially imposed in furtherance of the commutation or pardoning power, and in this case, at the petitioner's request. Now, the petitioner may have not gotten everything he wanted, because he obviously would like to walk free tomorrow, and he would have wanted a complete pardon, but that isn't the thing. The fact that if you request an executive commutation, you get less than what you might ideally want or ask for, it still remains an executive sentence, and we don't have the authority to review the exercise of the pardon power or the commutation power. That's not... We'd be jumping branches. Judge Wilkinson, we 100% agree with that. Well, let me ask you, I'm a little puzzled by that. I don't disagree with the propositions, but my question poses a question. There is now standing a ruling on a habeas corpus petition, which the district court arguably had no jurisdiction to enter. It's there, and it's not moot now for us, because that could be meaningful in some future proceeding. The secondary, the successive petitions, all kinds of arguments, the Supreme Court can change the law somewhere, and so it's important for the state to have this petition denied with prejudice and stricken, as opposed to leaving it there and saying, we're moot. I think it's not moot for us. I think it was moot for the district court. That's where I was going to go, Judge Niemeyer. How do we square that with Surratt? Because it was moot, Judge Mott, a long time ago in the district court. It's even more moot today. Moot doesn't matter when it becomes moot. What case law says that it depends on what time it was deferred? It's that the district court's analysis in this case looked at exactly... They understand you think it's wrong. They thought it was wrong in Surratt, right? Right, Judge Mott. It is moot, but it was moot at that time, and this court should say, okay, it's moot and vacate the district court's opinion because this case has been moot for a significant period of time, as soon as Governor McDonnell pardoned him, even assuming the district court had the authority to look behind the pardon through certifying it to the Virginia Supreme Court. But we wouldn't, to Judge Wilkinson's questioning, it is important for federal courts to respect the integrity of the certification process when they certify questions to state courts. The problem of the case is that you have too many winning arguments in one way or another. And if I take Judge Niemeyer's point, the Supreme Court in LeBlanc said that in the Virginia head, where you could at least apply for eligibility for parole after serving five years of your sentence at age 60, that that was a meaningful opportunity under Graham. That's right, Judge Mott. That's a square holding by the Supreme Court in LeBlanc. And the district court, in my view, just went completely in the opposite direction and disregarded, unfortunately, what was a clear and flat holding on the part of the Supreme Court. So the question that confronts us, and I think I agree that the bottom line here is that this thing should be dismissed with prejudice. But the question is, which road do we take? Is it the misuse? What's odd about the case is that the disposition below managed, I think, to disregard the certification process, to ignore our earlier opinion in Seurat, and to disregard the Supreme Court decision in LeBlanc. Now, that's really a hard thing to do, to commit three errors of that magnitude in a single case. But the question is, what road do we take? Because I think that I don't know that we even have jurisdiction here because I think there's an executive sentence. If we do have jurisdiction, the merits of the matter is plainly wrong. But what road do we take? Our position, Judge Wilkerson, if I can try to lay out the opinion, is that you have jurisdiction to review the district court's decision in this case, and that the case was moved... How could we have jurisdiction to review it when it's an executive sentence? So his sentence has changed here. Now, he's serving an executive sentence, but with conditions. And at least as the district court's order in this case exists, if he violates those conditions, he'll be back serving what the district court has said here is an unconstitutional sentence. And unless that decision is removed from the federal, from the books, or vacated in some form, then he's serving an unconstitutional sentence from the district court's order. We would ask... So your view is, despite the fact that we lack jurisdiction to review an executive sentence, that there's still a judicially imposed ruling that we would retain the power to review? Judge Wilkerson, unless the district court's opinion is vacated in this case, the way the opinion looks to the Commonwealth is that we are required to resentence Mr. Blount because district court said that the taint of his original sentencing cannot be cured by the exercise of executive clemency. And so that is the hook for this court's review. And then your secondary argument is that if he violates a condition of the second pardon, then he goes back to the first one. And the court did address that one. Correct. And you argue erroneously. So that order has to be vacated. And so there's still viability in the effect of that that we have to take care of. We do not have the power to review the original sentence because it's moot. Now, Surratt says the subsequent thing's a moot. But we do have a review obligation over what is arguably an erroneous district court decision. That's right, Judge Niemeyer. We agree with that. All right. Thank you. Yes, sir. Good morning. May it please the court. I'm John Cogshill. I represent Travion Blount with regard to this habeas corpus petition. During the pendency of the Attorney General's appeal of the order granting Blount's petition, Governor McAuliffe granted him a conditional and partial pardon, reducing his sentence to 14 years. My client has accepted this pardon and, under the circumstances, no longer wishes to prosecute his petition for resentencing any further and has instructed me, his attorney, to cease further efforts on his behalf in regard to his habeas petition except for the following. I've communicated to the Attorney General's office to offer the submission of a joint motion for voluntary dismissal of his appeal without prejudice. The Attorney General has refused to join in such a motion for the reasons that he argued. Well, you heard his argument here about why this case is not moving, so perhaps you can address that. So my client has instructed me to present his defense to this appeal based on the briefs as submitted. In the alternative, my client asks this court to dismiss the appeal without prejudice and to remand the matter to the district court with a mandate that the district court, one, vacate its order without prejudice and, two, accept my client's voluntary dismissal of his habeas corpus petition without prejudice. Why without prejudice? I mean, the complications in this whole process, you know, he still has time to serve. He has quite a few years yet to go. A lot of things can happen. And anything that you do hereafter will be through habeas corpus. And the question is, what role would this order that the court now has on the books have on a future habeas? Sure, he may want to dismiss this habeas, just like many inmates do, but there may be another habeas coming down two years from now. And if this is an erroneous habeas, why should we dismiss it? A ruling that grants habeas, why should we let that stand without prejudice or dismiss it without prejudice? The court is asking the difference between prejudice and without prejudice. Your Honors, for purposes of habeas, in other words, if he files another one, is there a difference? If we do it without prejudice, does it affect another habeas petition coming down the road? Your Honor, I honestly don't know the answer to that question. See, the hard thing is we can't just leave, I mean, just speaking purely for myself, I have a serious question as to whether the district court's ruling on the Graham issue was anything close to correct. And it seems very problematic, as the Solicitor General says, to just leave that hanging out there. Because what we would be doing is leaving the imputation that he was serving an illegal sentence that the judiciary has indicated that this man is serving an illegal sentence. And that, not just as a general jurisprudential matter, but in this particular case, would give rise to all kinds of mischief down the road. And I think it's something that we have to clear up because we don't want the situation where it's just hanging out there that someone is sitting in jail with what the judiciary regards as an illegal sentence. And I think there's a difference between the sentence that was being served before the commutation and this other sentence that is the other conditions of confinement and the other sentence that's now in effect. I mean, it seems to me important to use this case to clean up as much as we can. If there's maybe there's some confusion about this. I wouldn't have thought there was confusion after our order at Surratt. I would have thought that that judicial, that that earlier sentence was just gone and replaced, that the pardon, pal, was the end of it. That should have been all that was necessary. But the problem was the district court went on and suggested that this person was serving an illegal sentence. And I think the difference, and really I'm just speculating, Your Honor, I think the difference was that Travion Blount was a minor and Surratt was an adult. And this is basically minor child law given Graham and Montgomery. And it was very unusual because the district court suggested this. I mean, that's not what the district court said. District court seemed to think that there was the base of the dissent in Surratt was more persuasive than the other, the rest of us. And, Your Honor, looking, last night I sat down, I looked at Surratt, this court's decision less than a year ago. And all you have to do is replace the president with the governor and the word commutation with pardon. And Surratt with Blount. And it just, it mirrors right up. I think that the, it seems to me that you're, I don't understand why you're holding out that this could, should be a, you're withdrawing your arguments only without prejudice. It seems to me that you kind of, you should latch on to this commutation. Your Honor. And if you did that, I just don't know what we possibly could say other than what we said in Surratt. Well, Your Honor, I am latching on to it. And I see the rest of my time following my instructions of my client. He does want the court to use his briefs as submitted. So much has happened in the last 12 days, and I'm just following his instructions. But you're not going to dismiss, you're not going to accept a with prejudice. Do you understand what I'm saying? Yes, I do, Your Honor. Well, let me ask you this. Well, maybe you can have, I'm sorry, maybe you can have further discussions with your client and send us a 28-J letter to say if you would, consent to with prejudice, because as I understand the government's argument, what they're saying is they're worried about successive habeas petitions, and the effect of a without prejudice finding here. I think. And that's all they have. That's the only thing that's live. I think that's. So otherwise, Surratt would require us to dismiss the appeal, period. That's the end of it. I think that's a very good idea, Your Honor. A 28-J letter, allow me to talk with my client. He's been moved from one penitentiary to another just a couple of days ago. We are going to go see him in about a week or so. Well, I mean, you might even talk to him before that so we get the 28-J letter. Yes, ma'am. Okay, thank you very much. Thank you. And. Yes, sir. Your Honors, I have very little to add unless there's further questions from the court. Judge Niemeyer, you previously mentioned when I first stood up about LeBlanc controlling this case to Judge Wilkinson's points and others. It fully does control the case, no matter what sentence he's serving. Well, Judge Wilkinson raises the point, which is an interesting one, and probably one we have to take under consideration, is what do we say about the district court's opinion? What do we rely on? And it seems to me your position may be it doesn't matter as long as we reverse or vacate the habeas order because the court didn't have jurisdiction to enter it. That is the critical first point from our perspective, Judge Niemeyer. What we think is the most important issue for the court to address in its order is both because of Surratt and because of the way it was certified to the Virginia Supreme Court. Once Governor McDonald's pardon was considered constitutional under the Constitution of Virginia, the habeas petition should have been dismissed right at that point. And the live nature of it right now is if he violates a condition of the second pardon, then it'll revert to the first pardon, and that's the pardon the district court rendered illegal. Correct, Judge Niemeyer. Currently, he is serving under the district court's order an unconstitutional sentence on Surratt, and that's wrong under LeBlanc. The way I look at it is that there are almost two sentences here. One was the one that was essentially mooted by the commutation order, and that became an executive sentence under Surratt. We don't, that ends it. Goodbye, gone. And that's what should have been done had the district court decided to follow the majority rulings instead of a dissent. And, but then it wasn't left there. The district court went on, and where a district court goes on and makes a ruling that's going to cause all kinds of trouble down the road with possible successive petitions and the rest, we would have to have jurisdiction to review that kind of ruling. In other words, it should have been dismissed for an absence of jurisdiction to begin with. Instead, there was the further suggestion that the sentence that he's presently seeking is illegal under Graham, and that is a mischief maker down the road, and we can't be without power to review that. I agree, Judge Wilkinson. Quite frankly, under the district court's analysis in this case, the way she analyzed this, the sentence he is serving right now under Governor McCaul's pardon is also unconstitutional because she said the taint of the six life sentences he initially received cannot be cured by an exercise of executive clemency. The logic of the decision applies fully today as it did to the 40-year-old. The logic does, but the holding only reached the first commutation. Correct. And you're worried about even today holding, but you don't need to go that far because it is clearly conditional, which leaves it a live wire. That's right, Judge Niemeyer. One last point I would like to make is that we did move for reconsideration in the district court after Virginia versus LeBlanc to try to give the district court a chance to say that this did not violate Graham versus Florida under the plain holding in the US Supreme Court, but she decided to go on to say a whole lot more about what Graham requires. That just isn't supported by the case or consistent with Virginia versus LeBlanc. Unless the court has further questions, I'll cede the remainder of my time. All right, thank you. We will come to our agreed counsel and take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Diana Gribbon Motz